IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WHITNEY NATIONAL BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0249-WS-N |
| | ) |
| **THE FLYING TUNA, LLC,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Preliminary Injunction (doc. 5), as well as its Supplemental Memorandum of Law (doc. 11) filed in support of same. The court-established briefing schedule having expired with no party lodging objections, the Motion is now ripe for disposition.[1]

**I.  Relevant Background.**

Plaintiff, Whitney National Bank, brought this action against, *inter alia*, defendant The Flying Tuna, LLC, for breach of a promissory note and foreclosure of a security interest lien.

---

[1] In its discretion, the Court takes this matter under submission without an evidentiary hearing. A hearing is required on a motion for preliminary injunction only if the parties' proof involves contested issues of fact that call for credibility determinations. *See, e.g., Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1211 (11th Cir. 2003) (observing that an "evidentiary hearing is not always required before the issuance of a preliminary injunction" unless "facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue") (citations omitted); *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) (where raw facts are largely uncontested, and dispute centers on inferences to be drawn from such facts, district court may decide in its sound discretion whether evidentiary hearing is needed by balancing interests of speed and practicality against those of accuracy and fairness). Nothing in the record suggests the presence of contested issues of fact pertaining to the proposed preliminary injunction as to which credibility determinations are necessary. Indeed, there appear to be no contested issues of fact at all, given Flying Tuna's admission of all well-pleaded facts in the Complaint by virtue of its default in these proceedings.

According to the well-pleaded factual allegations of the Complaint, on April 4, 2008, Flying Tuna executed and delivered to Whitney a promissory note in the principal amount of $200,000, along with a commercial security agreement. (Doc. 1, ¶¶ 7-8.) In that agreement, Flying Tuna granted Whitney a security interest in its inventory, retail inventory, artwork, intangibles, and other items as collateral to secure the note. (*Id.*, ¶¶ 8-9.) On February 5, 2010, the Complaint alleges, Flying Tuna executed and delivered a Renewal Commercial Note (the "Note") and Security Agreement (the "Agreement") to Whitney. (*Id.*, ¶¶ 14-15.) As before, the Agreement granted Whitney a security interest in all of Flying Tuna's inventory, retail inventory, artwork, accounts receivable and general intangibles, all as security for the Note. (*Id.*, ¶ 16.)

The Complaint alleges that Flying Tuna failed to make required monthly payments on the Note beginning on January 5, 2011, and has made no subsequent payments. (*Id.*, ¶ 18.) Despite notice of this default, Flying Tuna failed to cure same or to respond to Whitney's demand for payment, resulting in acceleration of the full amount of the Note. (*Id.*, ¶ 19.) On that basis, Whitney sued Flying Tuna in this District Court for breach of the Note and foreclosure of Whitney's security interest lien in the collateral identified in the Agreement.[2]

Despite being served with process on May 23, 2011, and having a full and fair opportunity to appear thereafter, Flying Tuna elected not to defend against Whitney's claims. As such, a Clerk's Entry of Default (doc. 24) was issued as to that defendant on July 1, 2011. By virtue of its default, Flying Tuna has admitted all well-pleaded factual allegations in the Complaint. *See, e.g., Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 592 n.4 (S.D. Ala. 2007) ("The effect of a default is to render all well-pleaded factual allegations of the complaint (except those relating to damages) admitted."); *Frazier v. Absolute Collection Service, Inc.*, --- F. Supp.2d ----, 2011 WL 529997, *5 (N.D. Ga. Feb. 3, 2011) (recognizing that "well-pleaded facts in the complaint are deemed admitted" by defendant's default).

Whitney now seeks a preliminary injunction granting it the following relief: (i) prohibiting Flying Tuna "from disposing of property which is subject to Plaintiff's security interest lien without order of the Court or consent of Plaintiff"; (ii) requiring Flying Tuna "to

---

[2] Federal subject-matter jurisdiction has been properly pleaded pursuant to 28 U.S.C. § 1332, inasmuch as the Complaint specifically alleges complete diversity of citizenship and the amount in controversy plainly exceeds $75,000.

immediately provide Plaintiff with an inventory of all collateral subject to Plaintiff's security interest liens"; (iii) requiring Flying Tina "to provide an accounting of all accounts receivable"; and (iv) requiring Flying Tuna "to assemble all artwork subject to Plaintiff's security interest lien and turn over the same to Plaintiff in Baldwin County, Alabama pending the outcome of the instant litigation." (Doc. 5, at 3.) On June 1, 2011, the undersigned entered an Order (doc. 10) directing Whitney to file a supplemental memorandum explaining how each category of preliminary injunctive relief requested was appropriate given the applicable legal standard. Whitney in fact filed a supplemental brief. Flying Tuna was given a reasonable opportunity to respond, but again chose not to do so.

## II. Analysis.

"A preliminary injunction is an extraordinary and drastic remedy." *Citizens for Police Accountability Political Committee v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009) (citations and internal quotation marks omitted). "To obtain a preliminary injunction, the moving party must show (1) substantial likelihood of success, (2) irreparable harm, (3) that the balance of equities favors granting the injunction and (4) that the public interest would not be harmed by the injunction." *Mesa Air Group, Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1128 (11th Cir. 2009); *see also Citizens for Police Accountability*, 572 F.3d at 1217 (similar). Of course, "[a] party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010).

The Court readily finds that Whitney has shown a substantial likelihood of success on the merits. Plaintiff's evidentiary showing as to this element is that Flying Tuna borrowed money from Whitney and, in return, executed the Note in Whitney's favor. Plaintiff has further shown that Flying Tuna stopped paying on the Note in January 2011 and thereby defaulted on its contractual obligations to Whitney, that Flying Tuna's default triggered Whitney's rights under the Agreement, and that such rights include the right to seize and sell certain collateral (consisting, in part, of accounts receivable, general intangibles, and inventory, including retail inventory and artwork owned by Flying Tuna, wherever it may be located). Thus, Whitney has established a substantial factual likelihood that Flying Tuna is in default under the Note, and that Whitney will be entitled upon entry of final judgment in this case to obtain control of the broad, sweeping categories of collateral identified in the Agreement until such time as the loan has been repaid.

With regard to the second element, the Court agrees that Whitney has shown a likelihood that it will be irreparably injured unless Flying Tuna is restrained and enjoined from disposing of property that is subject to Whitney's security interest liens as specified in the Agreement. Federal courts recognize that "the judicial process can be rendered futile by a defendant's action or refusal to act during the pendency of the suit" and that Rule 65 relief may be appropriate "to preserve the court's power to render a meaningful decision after a trial on the merits." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005) (citation omitted); *see generally Scott*, 612 F.3d at 1295 ("An injury is irreparable if it cannot be undone through monetary remedies.") (citation and internal quotation marks omitted). In the absence of a preliminary injunction, Flying Tuna would potentially remain free to transfer, convey or otherwise dispose of assets to which Whitney may otherwise be entitled as collateral pursuant to the Agreement. The result of such transfer, conveyance or disposal could be that any monetary judgment ultimately obtained by Whitney for breach of the Note would be a hollow victory, absent collateral that can be seized or other assets belonging to Flying Tuna that might be used to satisfy the judgment. Particularly given Flying Tuna's silence in the face of the Rule 65 Motion, the Court finds that the irreparable harm element is satisfied as to the proposed injunction barring Flying Tuna from disposing of collateral within the scope of the Agreement.

      The remaining Rule 65 elements likewise support entry of this particular component of the preliminary injunction sought by Whitney. As to the balancing of the harms, the only facts before the Court at this time are that, in the absence of a preliminary injunction, Whitney may lose access to the collateral that Flying Tuna agreed to post in exchange for Whitney's loan of substantial funds that Flying Tuna has not repaid. This, in turn, may render Whitney unable to recover amounts owed on the Note by Flying Tuna. By contrast, there is no indication in the record that Flying Tuna will be harmed by the entry of Rule 65 relief barring it from disposal of collateral. The balance of harms clearly favors entry of a preliminary injunction. Finally, the public interest would be served by the effective, meaningful enforcement of the security agreement that Flying Tuna executed as part and parcel of the underlying loan transaction. Banks would understandably be loath to lend money if the borrowers could wriggle out of their security agreement obligations before entry of final judgment on a defaulted promissory note, simply by the sleight of hand of transferring collateral away from the borrower LLC to some

other non-debtor entity controlled or managed by the same underlying corporate or individual interests. Thus, the public interest supports entry of a preliminary injunction.

For the foregoing reasons, the Court agrees with Whitney that entry of a preliminary injunction is warranted to prohibit Flying Tuna from disposing of property which is subject to its security interest lien without court order or plaintiff's consent.

The remaining aspects of Whitney's desired preliminary injunction are situated quite differently. Recall that plaintiff is requesting a preliminary injunction compelling Flying Tuna "to immediately provide Plaintiff with an inventory of all collateral subject to Plaintiff's security interest," "to provide an accounting of all accounts receivable," and "to assemble all artwork subject to Plaintiff's security interest lien and turn over the same to Plaintiff in Baldwin County, Alabama pending the outcome of the instant litigation." (Doc. 5, at 3.) Such requested relief is far broader and more onerous than is reasonably necessary to protect Whitney from irreparable injury during the pendency of this litigation. While Whitney may understandably be concerned about Flying Tuna secreting or disposing of collateral before a final judgment is entered, that contingency has already been addressed by the Court's decision to enjoin Flying Tuna from such activity. Plaintiff makes no showing why further steps – above and beyond a blanket prohibition on disposing of the collateral without court approval or plaintiff's consent – are reasonably needed to prevent irreparable injury.

Insofar as Whitney desires an inventory and an accounting of collateral, there is no reason to believe that post-judgment discovery will not be adequate (if needed) to furnish that information to Whitney and facilitate its collection efforts at an appropriate time. Plaintiff has not shown that it would be irreparably harmed unless Flying Tuna were forced to compile and disclose that data immediately. And the notion that Whitney should be allowed to hold Flying Tuna's assets for safekeeping pending a final ruling on the merits would impose an unreasonable burden on defendant to move assets from various unspecified locations to Baldwin County, Alabama. It would also unhelpfully shift the risk of loss or misconduct from one side to the other, and potentially enmesh the Court and parties in protracted ancillary squabbles about which assets must be moved, where they should be stored, what restrictions should be imposed on Whitney's use of the assets, what access Flying Tuna would have to those assets, and so on, during the pendency of this case. In the absence of any evidence or any reason to believe that

Flying Tuna intends to flout the preliminary injunction forbidding its disposal of the collateral,[3] the Court will not impose the draconian, unnecessary restriction of compelling Flying Tuna to deliver all such collateral to Whitney now, antecedent to entry of final judgment on the merits. Simply put, as to the aspects of the proposed preliminary injunction denoted in Paragraphs (B) through (D) of the *ad damnum* clause of the Motion for Preliminary Injunction, plaintiff has failed to meet its burden of showing irreparable harm in the absence of such relief; therefore, Whitney is not eligible for the extraordinary remedy of a preliminary injunction in these respects. *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("A showing of irreparable injury is the *sine qua non* of injunctive relief.") (citations and internal quotation marks omitted).

## III.  Conclusion.

For all of the foregoing reasons, plaintiff's Motion for Preliminary Injunction (doc. 5) is **granted in part**, and **denied in part**, as follows:

1.  Pursuant to Rule 65(a), Fed.R.Civ.P., defendant Flying Tuna, LLC, its officers, agents, servants, employees, and attorneys, and those persons who are in active concert or participation with them, are **preliminarily enjoined and restrained** from disposing of property which is subject to plaintiff's security interest lien, without prior order of the Court or written consent by Whitney. The collateral subject to this restriction consists of the following categories of property owned by Flying Tuna, wherever such property may be located: (a) all accounts receivable, (b) all general intangibles, and (c) all inventory, including but not limited to all retail inventory and artwork, pending entry of final judgment on the merits in this case.[4]

---

[3] At most, Whitney seeks to impute nefarious conduct to Peter McFarland (sole shareholder of Flying Tuna's sole member) by stating that a bankruptcy trustee moved to dismiss McFarland's Chapter 11 bankruptcy petition because, *inter alia*, he had not filed financial reports for Flying Tuna. The Court takes judicial notice, however, that the trustee withdrew that motion on June 13, 2011. Thus, there is no information before the Court that McFarland is hiding information about Flying Tuna's assets from any tribunal, so as to give rise to concerns that he would thumb his nose at an order enjoining him from disposing of the collateral pending entry of final judgment in this case.

[4] Per the parties' Agreement, the terms "accounts," "general intangibles," and "inventory" shall have the meanings prescribed in the Alabama Uniform Commercial Code.

2. Pursuant to Rule 65(c), plaintiff is **ordered** to give security in the amount of **$1,000.00**, by depositing same with the Clerk of Court on or before **July 14, 2011**. This Order shall be effective upon the Clerk's receipt of said security.

3. Defendant Flying Tuna not having appeared in this action to date, plaintiff's counsel is **ordered** to serve a copy of this Order on defendant in a manner calculated to alert it immediately to entry of same. Plaintiff is reminded that this Order is binding only on the above-described persons "who receive actual notice of it by personal service or otherwise." Rule 65(d)(2), Fed.R.Civ.P. It is plaintiff's sole responsibility to ensure that proper notice is given to the appropriate persons.

DONE and ORDERED this 7th day of July, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE