IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WHITNEY NATIONAL BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0249-WS-N |
| | ) |
| THE FLYING TUNA, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Entry of Default Judgment as to Count I Against The Flying Tuna, LLC (doc. 33), and on defendant/crossclaimant's Motion for Default Judgment on Crossclaim (doc. 40). Both Motions are ripe for disposition.

**I.   Background.**

On May 13, 2011, plaintiff, Whitney National Bank ("Whitney"), commenced this action by filing a Complaint (doc. 1) against defendants, The Flying Tuna, LLC ("Flying Tuna"), and M & I Marshall and Ilsley Bank ("M&I"). The crux of the Complaint was Whitney's allegation that Flying Tuna had defaulted on the Renewal Commercial Note it had executed in Whitney's favor on February 5, 2010. As pleaded in the Complaint, such default occurred when Flying Tuna failed to make the payment due under that Note on January 5, 2011, as well as all subsequent payments. On that basis, Whitney alleges state-law causes of action against Flying Tuna for breach of the promissory note (Count I) and foreclosure of security interest liens (Count II) as to certain Flying Tuna property that was collateral for the promissory note.[1]

---

[1]   Although these causes of action sound exclusively in state law, federal subject-matter jurisdiction was properly predicated on the diversity provisions of 28 U.S.C. § 1332. Specifically, the Complaint alleges that Whitney is a citizen of Louisiana for diversity purposes; that defendant Flying Tuna is a Florida limited liability company whose only member is The Flying Tarpon, Inc., a Florida corporation; that defendant M&I is a Wisconsin citizen for diversity purposes; and that the amount in controversy exceeds $75,000.

Whitney named M&I as a defendant with respect to Count II, seemingly as a precautionary measure, because M&I "may claim some right, title or interest in or to the property which is the subject of the action by way of a security interest lien, or for some other reason." (Complaint, ¶ 33.) It is unclear to what extent any real case or controversy exists as between Whitney and M&I, or whether there is any dispute between them as to the relative strengths of their interests in certain collateral that Flying Tuna may or may not possess.[2]

Upon being served with process, M&I filed an Answer (doc. 17) that included a Crossclaim against Flying Tuna. The Crossclaim stated a state-law claim for breach of commercial guaranty, based on allegations that Flying Tuna had executed a Commercial Guaranty in M&I's favor on December 13, 2007, guaranteeing payment and performance by another, related entity on a promissory note (the "Flying Tarpon Note"); that such other entity had defaulted on the Flying Tarpon Note by failing to make payments due on April 12, 2011, and thereafter; and that Flying Tuna had subsequently defaulted under the Commercial Guaranty by failing to fulfill its payment obligations thereunder vis a vis the Flying Tarpon Note.

The record shows that both Whitney and M&I timely and properly served Flying Tuna. In particular, a private process server retained by Whitney served a copy of the Summons and Complaint on Flying Tuna on May 20, 2011, by serving Peter McFarland, Flying Tuna's registered agent for service of process, at a residential address on Marco Island, Florida. (Doc. 6.) Similarly, M&I properly served its Answer (including the Crossclaim) on Flying Tuna by mailing copies to McFarland at multiple addresses, including the residence address utilized for service by Whitney's process server, at various times in June and July 2011. (Docs. 17, 27, 28.) Despite this clear proof of service, Flying Tuna has neither appeared nor taken any action whatsoever to defend against Whitney's and M&I's claims in this action. On that basis, Clerk's Entries of Default (docs. 24, 38) were entered against Flying Tuna pursuant to Rule 55(a), Fed.R.Civ.P., as to Whitney's claims and M&I's crossclaim on July 1, 2011 and August 9, 2011,

---

[2] The Report of Parties' Planning Meeting (doc. 25) is ambiguous as to whether there is an actual dispute between Whitney and M&I, but implies that there is not. For example, both parties stated in their Rule 26(f) Report that no merits discovery of any kind is needed as to plaintiff's claims, and that any trial should take no more than two hours, with that time being devoted to fixing attorney's fees and collateral valuations, rather than merits issues.

respectively.³ Thereafter, both Whitney and M&I filed Motions for Default Judgment, supported by affidavits and exhibits to prove up the damages sought.

**II.      Analysis.**

    *A.      Entry of Default Judgment is Appropriate.*

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure … to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to appear and defend in a timely manner following proper service of process.⁴ In short, "[w]hile modern courts

---

    ³    The court file confirms that Flying Tuna has been given ample notice of these default proceedings. Indeed, the Clerk's Office mailed a copy of at least the July 1 Clerk's Entry of Default to Flying Tuna at its service address. Moreover, Certificates of Service confirm that both Whitney and M&I served copies of their default judgment submissions on Flying Tuna through McFarland at the service address. (*See* docs. 33, 40.) Despite unequivocal, repeated notice of these ongoing default proceedings, Flying Tuna elected to remain silent and to refrain from taking any action to defend its interests in this case. Accordingly, the Court concludes that no further notice or invitation to Flying Tuna is warranted prior to entry of default judgment.

    ⁴    *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1290 (S.D. Ala. 2010) ("Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate."); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default judgment against defendant who failed to answer or move against complaint for nearly three (Continued)

do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted). That is precisely what Flying Tuna has done here. Despite being served with process back in May, Flying Tuna has declined to appear or defend, and has effectively prevented this litigation from leaving the starting blocks.

The law is clear, however, that Flying Tuna's failure to appear and the Clerk's Entries of Default do not automatically entitle Whitney or M&I to a default judgment in the requested (or any) amount. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint and Crossclaim, and is satisfied that both set forth viable causes of action against Flying Tuna under Alabama law. In particular, Count One of the Complaint alleges that Flying Tuna was indebted to Whitney pursuant to a Renewal Commercial Note executed on February 5, 2010, and that Flying Tuna subsequently defaulted on its obligations under that note by failing to make all payments due on January 5, 2011, and thereafter. Count One further alleges that when Whitney notified Flying Tuna of its default and demanded payment, Flying Tuna failed to respond, resulting in acceleration of the full amount due under the Renewal Commercial Note. Similarly, M&I's

---

months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond within time provided by Rule 12(a)(2)).

Crossclaim alleges that Flying Tuna became indebted to M&I by executing a Commercial Guaranty in December 2007 guaranteeing payment and performance under the Flying Tarpon Note, that the persons and entities indebted to M&I under the Flying Tarpon Note defaulted by failing to make payments due on April 12, 2011 and thereafter, that M&I accelerated the full amount due under the Flying Tarpon Note, and that Flying Tuna then defaulted under the Commercial Guaranty by failing to fulfill its payment obligations.

These and other factual allegations set forth in Count One of the Complaint, as well as in the Crossclaim, are adequate to state viable causes of action under Alabama law for breach of promissory note and breach of guaranty, respectively.[5] Because the well-pleaded factual allegations in the Complaint and Crossclaim are deemed admitted by virtue of Flying Tuna's default, and because they are sufficient to state breach-of-contract claims under Alabama law, the Court finds that Flying Tuna is liable to Whitney under Count One of the Complaint, and is also liable to M&I under the Crossclaim.

Simply put, entry of default judgment against defendant Flying Tuna is appropriate pursuant to Rule 55, given its failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint and Crossclaim (all of which Flying Tuna has now admitted) to establish its liability to Whitney on the breach of note theory set forth in Count One of the Complaint, and its liability to M&I on the breach of guaranty theory identified in the Crossclaim.

### B. *Applicable Legal Standard for Damages.*

Notwithstanding the propriety of default judgment against Flying Tuna, it remains incumbent on plaintiff and crossclaimant alike to prove their respective damages. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588,

---

[5] *See generally Barrett v. Radjabi-Mougadam*, 39 So.3d 95, 98 (Ala. 2009) (elements of breach of contract claim under Alabama law are valid contract, plaintiff's performance, defendant's nonperformance, and damages); *Christy v. Smith Mountain, Inc.*, 855 So.2d 1103, 1106 (Ala.Civ.App. 2003) (complaint stated claim for unpaid account by alleging that defendant owed plaintiff sum certain pursuant to agreement between parties for sale of materials).

593 n.5 (S.D. Ala. 2007); *see also Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp.2d 599, 605 (E.D. Pa. 2009) ("A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks."). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Natures Way Marine, LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or speculative").[6] "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what

---

[6] In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id.* at 1232 n.13; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp.2d 157, 160 (D.D.C. 2009) (district court is not required to hold hearing to fix damages in default judgment context as long as it ensures there is a basis for damages specified); *Eastern Elec. Corp.*, 652 F. Supp.2d at 605 ("In considering the amount of damages ..., the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant."); *Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation."). In this case, neither Whitney nor M&I has requested a damages hearing; rather, they have submitted detailed evidence in support of their requested damages amounts. In light of these authorities and circumstances, the damages determination will stand or fall on the written evidentiary submissions, without the necessity of a formal hearing.

those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010).

  C. ***Whitney's Damages.***

  To establish its damages on the breach of promissory note claim, Whitney shows that on February 5, 2010, Flying Tuna executed a Renewal Commercial Note promising to pay Whitney the sum of $179,776, plus interest, in 47 monthly installments of $3,750 plus interest, beginning March 5, 2010 and concluding with a final payment on February 5, 2014. (Hale Aff. (doc. 33, Exh. A), at Exh. 8.) Whitney further shows that Flying Tuna agreed to an interest rate of Wall Street Prime plus 1.00% (with a minimum rate of 5.00%), and that Flying Tuna also agreed to default interest rate of 18% per annum should an event of default occur. (*Id.*) By virtue of its default in this lawsuit, Flying Tuna has admitted the Complaint's factual allegation that it defaulted under the Renewal Commercial Note by failing to make payments due beginning on January 5, 2011, and continuing thereafter.

  Whitney's evidence is that the total outstanding principal balance due and owing on the Renewal Commercial Note is **$142,276.16**, and that the accrued regular interest (at a 5% rate) through March 25, 2011 is **$2,198.11**. (Hale Aff., ¶ 19.) Using plaintiff's March 26, 2011 date for commencing the accrual of default interest rate at the 18% rate specified in the agreement, Whitney is also entitled to default interest payments on the unpaid principal totaling **$13,471.41** through and including October 4, 2011. All of these sums are proper components of a damage award on default judgment, pursuant to the terms of the Renewal Commercial Note that Flying Tuna breached. Adding these three categories of damages (unpaid principal, accrued interest through March 25, 2011 at the 5% rate, accrued interest from March 26, 2011 through the date of this Order at the 18% default rate), the Court finds that Whitney is entitled to entry of a default judgment against Flying Tuna in the total amount of **$157,945.68**.

  D. ***M&I's Damages.***

  With respect to the Crossclaim, M&I shows that, on or about December 13, 2007, Flying Tuna executed a Commercial Guaranty in M&I's favor, and that under that terms of that Guaranty, Flying Tuna unconditionally guaranteed full and punctual payment of Flying Tarpon's indebtedness under the Flying Tarpon Note. (Villemaire Aff. (doc. 40, Exh. A), ¶ 6 & Exh. 3.) As renewed in June 2008, the Flying Tarpon Note provided that Flying Tarpon and other borrowers were indebted to M&I in the principal amount of $250,000, that interest would accrue

at a variable rate (then 5%), that a 5% late charge would be added to any payment that was more than 10 days late, and that upon the borrowers' failure to make any payment, the variable interest rate would be increased by 3.00% as a default interest rate. (Villemaire Aff., ¶ 5 & Exh. 2.) M&I likewise shows that Flying Tarpon defaulted on the Flying Tarpon Note by failing to make payments due and owing, beginning on April 12, 2011; and that Flying Tuna subsequently defaulted on its obligations under the Commercial Guaranty by failing to make those payments to M&I as promised. (*Id.*, ¶¶ 9, 12.)[7]

M&I's evidence is that the total principal balance due and owing on the Flying Tarpon Note is **$93,930.76**, plus late charges of **$1,296.90**. (*Id.*, ¶ 10.) Computing interest at the default interest rate of 8.00% from the time of default through October 4, 2011, the Court finds that M&I is also entitled to recover **$2,259.81** in interest due and owing on the Flying Tarpon Note.[8] Flying Tuna guaranteed the payment of all of these amounts via the Commercial Guaranty, then breached that promise by failing to make any such payments. As such, M&I is entitled to entry of default judgment against Flying Tuna in the sum of the three bold-type figures herein, or **$97,487.47**.

### III. Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Plaintiff's Motion for Entry of Default Judgment as to Count I Against The Flying Tuna, LLC (doc. 33) is **granted**, and a default judgment will be entered in favor

---

[7] The Court recognizes that Flying Tuna executed the Commercial Guaranty in December 2007, apparently contemporaneously with the original Flying Tarpon Note, and that M&I has made no showing that a new commercial guaranty was executed to correspond to the renewal of the Flying Tarpon Note in June 2008. For purposes of these default judgment proceedings, however, such circumstances are irrelevant. Through its default in this civil action, Flying Tuna has admitted the well-pleaded allegation in the Complaint that Flying Tuna, by executing the Commercial Guaranty, guaranteed "payment and performance of the Promissory Note and the Renewal Promissory Note." (Doc. 17, ¶ 39.) As such, Flying Tuna's liability to M&I under the Commercial Guaranty has already been established via its default in this litigation. Liability having been established, all that remains is to fix the amount of damages.

[8] To reach this figure, the Court starts with the $1,395.13 in interest that M&I says accrued from the time of default through August 23, 2011. An additional 42 days' interest at the default interest rate of 8% (which equates to $20.59/day) from August 23 through the date of entry of this Order totals $864.68. The sum of $1,395.13 and $864.68 is the $2,259.81 figure that will be awarded to M&I as the interest component of damages.

of plaintiff, Whitney National Bank, and against defendant The Flying Tuna, LLC, in the total amount of **$157,945.68**;

2. Crossclaimant's Motion for Default Judgment on Crossclaim Against The Flying Tuna, LLC (doc. 40) is **granted**, and a default judgment will be entered in favor of crossclaimant, M&I Marshall & Ilsley Bank, and against defendant The Flying Tuna, LLC, in the total amount of **$97,487.47**; and

3. Whitney and M&I must file a joint status report regarding the remaining claims in this action on or before **October 18, 2011**.[9]

DONE and ORDERED this 4th day of October, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] The particular issues addressed in the status report should include, without limitation, the following: (i) whether there exists any *bona fide* case or controversy between Whitney and M&I, or whether Whitney's claims against M&I can be dismissed on stipulation, settlement or otherwise; (ii) whether there is any need for Whitney's Count II to remain active against Flying Tuna, when the full panoply of post-judgment remedies are available to Whitney (and M&I, for that matter) to execute on the default judgment in this case pursuant to Rule 69(a), Fed.R.Civ.P., and Alabama law, and if so what authorities and/or legal principles justify or warrant retention of Count II as a live cause of action to execute on the default judgment; (iii) whether the Preliminary Injunction (doc. 26) entered on July 7, 2011 remains necessary, now that Whitney has obtained a money judgment from which it can execute on the assets in question; and (iv) to the extent that Whitney and M&I seek an award of attorney's fees (which neither requested in its Motion for Default Judgment), why they did not present evidence of such fees in connection with their Rule 55(b) motions and when they intend to file appropriate motions and proof (including affidavits and relevant billing invoices) to support the claimed fee awards and to request modification of the default judgment entered on this date. By listing these items, the Court does not imply that it would be improper for this litigation to proceed in any of these respects, but simply is looking to establish the path forward post-entry of default judgment.